**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | | | |
|---|---|---|---|
| 4505 MADISON LLC | ) | | |
| and FISHER LAW LLC, | ) | | |
| | ) | | |
| Plaintiffs, | ) | | |
| | ) | | |
| v. | ) | No. | 4:20-cv-00590-BCW |
| | ) | | |
| THE TRAVELERS INDEMNITY | ) | | |
| COMPANY OF AMERICA, | ) | | |
| | ) | | |
| Defendant. | ) | | |

**BRIEF IN SUPPORT OF DEFENDANT**
**THE TRAVELERS INDEMNITY COMPANY OF AMERICA'S MOTION**
**TO DISMISS AND, ALTERNATIVELY, MOTION TO STRIKE CLASS CLAIMS**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 3

ARGUMENT AND AUTHORITIES ......................................................................... 7

I.    All Claims Fail to State A Cause of Action Because Plaintiffs Are Receiving the Benefits of Their Bargain. ................................................................................. 9

II.   Plaintiffs' Premium Factors Cannot Change as a Result of the Pandemic, and Travelers' Filed Rating Rules Do Not Provide An Audit Right. .................................................... 11

III.  To Challenge Travelers' Rules and Rates, Plaintiffs Have Failed To Exhaust Administrative Remedies ........................................................................... 14

IV.   Plaintiffs' Claims For Breach of Duty of Good Faith and Fair Dealing (Count Two), Unjust Enrichment (Count Three), and Money Had And Received (Count Four) Should Be Dismissed. ................................................................................. 16

V.    Plaintiffs' Claims for Declaratory or Injunctive Relief Should Be Dismissed. ............. 17

VI.   The Court Should Dismiss or Strike the Class Allegations at the Pleadings Stage. ...... 19

      A.    Plaintiffs Cannot Establish Rule 23's Commonality or Typicality Requirements. ................................................................................... 21

      B.    Plaintiffs Cannot Satisfy 23(b)(3)'s Predominance Requirement. .................... 25

CONCLUSION .......................................................................................................... 27

**Cases**

*Advanced Acupuncture Clinic, Inc. v. Allstate Ins. Co.*,
Civil Action No. 07-4925(JAP), 2008 WL 4056244 (D.N.J. Aug. 26, 2008),
*aff'd on other grounds sub nom, St. Louis Park Chiropractic, P.A. v. Fed. Ins.
Co.*, 342 F. App'x 809 (3d Cir. 2009) ........................................................................ 20

*Alaska Airlines, Inc. v. Carey*,
No. C07-5711 RBL, 2008 WL 2725796 (W.D. Wash. July 11, 2008), *aff'd,*
395 Fed. App'x 476 (9th Cir. 2010) ........................................................................... 20

*Arthur v. Medtronic, Inc.*,
No. 4:14-CV-52 CEJ, 2014 WL 3894365 (E.D. Mo. Aug. 11, 2014) ....................... 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................... 7

*Barfield v. Sho-Me Power Elec. Co-op.*,
No. 11-CV-04321-NKL, 2013 WL 3872181 (W.D. Mo. July 25, 2013), *aff'd
sub nom. Barfield v. Sho-Me Power Elec. Coop.*, 852 F.3d 795 (8th Cir. 2017) ....... 25

*Bearden v. Honeywell Int'l, Inc.*,
No. 3:09-01035, 2010 WL 1223936 (M.D. Tenn. Mar. 24, 2010) ............................ 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................................... 7

*Blair v. City of Hannibal*,
194 F. Supp. 3d 875 (E.D. Mo. 2016) ....................................................................... 17

*Browe v. Evenflo Co., Inc.*,
No. 14-4690 ADM/JJK, 2015 WL 3915868, at *4 n.1 (D. Minn. June 25,
2015) ............................................................................................................................. 8

*Canady v. Allstate Ins. Co.*,
No. 96CV0174, 1997 WL 33384270 (W.D. Mo. June 19, 1997), *aff'd*, 162
F.3d 1163 (8th Cir. 1998) ........................................................................................... 24

*Casey v. Coventry Healthcare of Kansas, Inc.*,
No. 08-0201-CV-W-DGK, 2010 WL 3636140 (W.D. Mo. Sept. 10, 2010) .............. 25

*Cheng v. BMW of N. Am., LLC*,
No. CV-12-09262, 2013 WL 3940815 (C.D. Cal. July 26, 2013) ............................... 8

*Coleman v. Sears Home Improvement Prod. Inc.*,
   Civil Action No. 16-2537, 2017 WL 1064965 (E.D. La. Mar. 20, 2017)..............................20

*Decoursey v. Am. Gen. Life Ins. Co.*,
   No. 13-01221-CV-W-GAF, 2014 WL 12600954 (W.D. Mo. Apr. 15, 2014) .......................17

*Diaz v. First Am. Home Buyers Prot. Corp.*,
   No. 09-CV-0775 H (WMC), 2011 WL 13143553, at *6 (S.D. Cal. Sept. 8,
   2011)..................................................................................................................................26

*In re Express Scripts, Inc.*,
   No. 4:04CV1009 HEA, 2010 WL 2671456 (E.D. Mo. June 30, 2010) ...................................7

*Fid. Sec. Life Ins. Co. v. Dir. of Revenue*,
   32 S.W.3d 527 (Mo. 2000)...................................................................................................11

*Fleetwood Acres v. Fed. Hous. Admin.*,
   171 F.2d 440 (2d Cir. 1948) .................................................................................................10

*Flint v. Ally Fin. Inc.*,
   No. 3:19-CV-00189-FDW-DCK, 2020 WL 1492701 (W.D.N.C. Mar. 27,
   2020)..................................................................................................................................20

*Florida State Bd. of Admin. v. Green Tree Financial Corp.*,
   270 F.3d 645 (8th Cir. 2001) ..................................................................................................7

*State ex rel. Gardner v. Stelzer*,
   568 S.W.3d 48 (Mo. Ct. App. 2019) .....................................................................................18

*Gerke v. City of Kansas City*,
   493 S.W.3d 433 (Mo. Ct. App. 2016) ...................................................................................17

*Harris v. Union Elec. Co.*,
   766 S.W.2d 80 (Mo. en banc 1989).......................................................................................18

*Hendrickson v. United of Omaha*,
   No. 4:15CV3075, 2016 WL 389974 (D. Neb. Feb. 1, 2016) ...................................................8

*Hill v. Wells Fargo Bank, N.A.*,
   946 F. Supp. 2d 817 (N.D. Ill. 2013).....................................................................................20

*Johnson v. Atkins Nutritionals, Inc.*,
   No. 2:16-CV-04213-MDH, 2018 WL 9868535 (W.D. Mo. Apr. 4, 2018) ............................19

*In re Katrina Canal Breaches Litig.*,
   401 Fed. App'x 884 (5th Cir. 2010) ......................................................................................26

*Kraetsch v. United Serv. Auto. Ass'n*,
   No. 4:14-CV-264-CEJ, 2015 WL 1457015 (E.D. Mo. Mar. 30, 2015) .................................19

2

*U.S. ex rel. Kraxberger v. Kansas City Power & Light Co.*,
    756 F.3d 1075 (8th Cir. 2014) ................................................................8

*Petition of Lauer*,
    788 F.2d 135 (8th Cir. 1985) ................................................................24

*Lederer v. Dir. of Div. of Aging*,
    865 S.W.2d 682 (Mo. Ct. App. (W.D.) 1993) ........................................15

*Lumpkin v. E.I. Du Pont de Nemours & Co.*,
    161 F.R.D. 480 (M.D. Ga. 1995) ..........................................................20

*McClain v. Shelter Gen. Ins. Co.*,
    No. 97-1139-CV-W-FJG, 2007 WL 844769 (W.D. Mo. Mar. 16, 2007) *aff'd sub nom. Saunders v. Flowers*, 537 F.3d 961 (8th Cir. 2008) ................14

*McCrary v. Stifel, Nicolaus & Co., Inc.*,
    687 F.3d 1052 (8th Cir. 2012) ..............................................................19

*Miller v. Horn*,
    254 S.W.3d 920 (Mo. Ct. App. 2008) ...................................................17

*Moon v. Cty. of Orange*,
    No. SACV 19-258 JVS, 2020 WL 2332164 (C.D. Cal. Mar. 18, 2020) ....20

*N. New York Sav. Bank v. Fed. Sav. & Loan Ins. Corp.*,
    515 F.2d 1355 (D.C. Cir. 1975) ...........................................................10

*OS33 v. CenturyLink Commc'ns, L.L.C.*,
    No. 4:17-CV-2603 CAS, 2018 WL 2267910 (E.D. Mo. May 17, 2018) ...18

*Park Irmat Drug Corp. v. Express Scripts Holding Co.*,
    911 F.3d 505 (8th Cir. 2018) ..................................................................7

*Parker v. City of St. Joseph*,
    167 S.W.3d 219 (Mo. Ct. App. 2005) ...................................................15

*Pietoso, Inc. v. Republic Servs., Inc.*,
    No. 4:19-CV-397-RLW, 2020 WL 224516 (E.D. Mo. Jan. 15, 2020) ..........9, 17, 18

*Pilgrim v. Universal Health Card, LLC*,
    660 F.3d 943 (6th Cir. 2011) ................................................................19

*Pittman v. City of Columbia*,
    309 S.W. 3d 395 (Mo. Ct. App. (W.D.) 2010) ......................................16

*Randall v. W. Life Ins. Co.*,
    336 S.W.2d 125 (Mo. App. 1960). ....................................................9, 11

Case 4:20-cv-00590-BCW   Document 10   Filed 09/10/20   Page 5 of 36

*Rental Co. LLC v. Carter Group, Inc.*,
    399 S.W.3d 63 (Mo. Ct. App. 2013) ..................................................................16

*Ross–Randolph v. Allstate Ins. Co.*,
    Civil No. DKC–99–3344, 2001 WL 36042162 (D. Md. May 11, 2001) ..............................20

*Saunders v. BellSouth Advert. & Pub. Corp.*,
    No. 98-1885-CIV, 1998 WL 1051961 (S.D. Fla. Nov. 10, 1998)..........................20

*Saunders v. Farmers Ins. Exchange*,
    440 F.3d 940 (8th Cir. 2006) ............................................................15

*Shafinia v. Nash*,
    372 S.W.3d 490 (Mo. Ct. App. (W.D.) 2012) .......................................15

*Stahl v. U.S. Dep't of Agric.*,
    327 F.3d 697 (8th Cir. 2003) ...............................................6, 8, 23, 24

*In re State Farm Fire & Cas. Co.*,
    872 F.3d 567 (8th Cir. 2017) .........................................................25, 26

*Stokes v. CitiMortgage, Inc.*,
    No. CV 14-00278 BRO, 2015 WL 709201 (C.D. Cal. Jan. 16, 2015)...................20

*Vann v. Dolly, Inc.*,
    No. 18 C 4455, 2020 WL 902831 (N.D. Ill. Feb. 25, 2020) .................................20

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .......................................................................21, 22, 25

*Webb v. Exxon Mobil Corp.*,
    856 F.3d 1150 (8th Cir. 2017) ........................................................22

*Willstrop v. Prince Mktg. LLC*,
    No. 8:17CV350, 2018 WL 3201888 (D. Neb. Feb. 15, 2018) ...............................7

*Young v. Patel*,
    No. 08-0573-CV-W-HFS, 2010 WL 3893611 (W.D. Mo. Sept. 30, 2010) ..........................7

**Statutes**

Cal. Ins. Code § 482 .......................................................................9

Mo. Rev. Stat. § 379.318(4) ...........................................................16

Mo. Rev. Stat. § 379.346 ..............................................................14

Mo. Rev. Stat. § 379.348 ..............................................................14

4

## Other Authorities

(2020), https://ldi.la.gov/docs/default-source/documents/legaldocs/rules/rule39-cur-mid-termauditofauditable ............................................................................... 23

https://www.kcmo.gov/home/showdocument?id=4065; ............................................. 6

Insurance. Mo. Dept. Ins. Bulletin 20-08 (April 10, 2020) available at https://insurance.mo.gov/laws/bulletin/documents/Bulletin20-08ExpeditiousReviewofSERFFFilingsforCOVID-19PremiumRelifeMeasures4-10-2020.pdf .......................................................... 11

J. Boyum, *Next Normal: Longview music store sees increase in business during COVID-19 pandemic* ....................................................................................... 24

KFVS NEWS (Aug. 18, 2020), *https://www.kfvs12.com/2020/08/18/plumber-sees-increase-business-since-covid-/* .............................................................................. 24

KLTV NEWS (Aug. 6, 2020) *https://www.kltv.com/2020/08/06/webxtra-longview-music-store-sees-increase-business-during-covid-pandemic/* (Aug. 6, 2020) ...................... 24

Missouri Dep't of Commerce & Ins., Missouri General Instructions Document Property & Casualty (Aug. 2019), https://insurance.mo.gov/industry/filings/pc/documents/Missouri_Filing_Instructions_amp__Guidelines.pdf ....................................................................... 8

MLIVE.COM (June 1, 2020), *https://www.mlive.com/news/ann-arbor/2020/06/bike-boom-washtenaw-shops-see-huge-increase-in-business-amid-coronavirus-stay-at-home-orders.html* ........................................................ 24

Senior Servs., Stay At Home Order (Apr. 3, 2020), https://governor.mo.gov/priorities/stay-home-order ............................................... 6

T. Davis, *Plumber Sees Increase in Business Since COVID-19* .................................... 24

U.S. Census Bureau, Small Business Pulse Survey https://portal.census.gov/pulse/data/#data (as of August 20, 2020, national data measuring effect of changing business conditions due to pandemic showed while some businesses had decreased operating capacity relative to a year ago, 37.5% of businesses had no change in operating capacity, 1.5% increased operating capacity by 50% or more and 5.9% increased operating capacity by less than 50%) ............................................................................... 23

# INTRODUCTION

Through this lawsuit, Plaintiffs attempt to turn basic contract law on its head. They demand that Travelers meet its end of the bargain and provide the exact insurance coverage that Plaintiffs purchased while at the same time demanding that Travelers refund some of the premium that it charged in exchange for providing that coverage. Plaintiffs demand this refund in the middle of their policy period, via an inapplicable "audit" procedure, because they claim their insurance charges should have decreased substantially due to the COVID-19 pandemic. They are simply wrong. Plaintiffs' claims violate both black-letter contract law and the terms of their insurance contract, and would force Travelers to violate its Missouri rules and rates filings. It is revealing that this putative nationwide class action is the first that Travelers learned of Plaintiffs' complaint, but Travelers must now respond to an ill-suited class action litigation for an issue that is without merit.

Plaintiffs purchased an "Office Pac" policy comprised of several different coverages. Travelers charged a single composite premium for these coverages. Plaintiffs correctly allege "Travelers used its rules and rates to determine Plaintiffs' and the Class members' exposure to calculate premiums." Plaintiffs also acknowledge that Travelers files its rules and rates with the Missouri Department of Insurance. Pursuant to the parties' agreement, Travelers must set a premium for Plaintiffs' policy in accordance with its rule and rate filings. The filed rules and rates specify the factors that govern Plaintiffs' premium charges – and are absolutely clear that these charges do not and cannot change due to the COVID-19 pandemic. Moreover, the rules and rates for the Plaintiffs' policy do not provide for an audit right, let alone an audit during the policy period. Accordingly, Travelers has no obligation to "adjust" Plaintiffs' policy as Plaintiffs claim, nor has there been any "overcharge."

Equally fundamentally, Plaintiffs have failed to exhaust their administrative remedies. Plaintiffs' real dispute is with Travelers' rules and rates and the premium charged, and as such, Missouri requires parties to pursue their remedies first with the Missouri Department of Insurance. Plaintiffs have failed to do so. Moreover, granting Plaintiffs the rate relief that they appear to demand will implicate, and necessarily alter, rates Travelers has filed with the state, which would be improper. Indeed, to afford Plaintiffs the relief they seek would require filing and approval with the state.

Plaintiffs purport to allege five causes of action: Count One – Breach of Contract; Count Two – Breach of the Duty of Good Faith and Fair Dealing; Count Three – Unjust Enrichment; Count Four – Money Had and Received; and Count Five – Declaratory and Injunctive Relief. Plaintiffs seek damages and other monetary relief in the form of "restitution, disgorgement, [and] rescission."[1]

Moreover, Plaintiffs endeavor to represent "All persons and entities that: (a) purchased commercial liability insurance with Travelers; (b) paid a premium for the coverage based on Travelers' rates and rules; and (c) were subject to a Stay at Home Order."[2] Even if Plaintiffs had viable individual claims – which they do not – Plaintiffs' notion that their claims can be brought on behalf of a nationwide class of virtually all of Travelers' commercial general liability policyholders is contrary to well-settled class action law. Although the Court should not need to reach this question given the fundamental flaws with Plaintiffs' claims, if any part of the Complaint survives, the class claims should be struck for reasons that are obvious based on the nature of the claims here: the pandemic's effects on businesses and their risk and claim profiles are hardly uniform across all of Travelers' insureds. Businesses and their insurance risks differ

---

[1] Compl., p. 17.
[2] Compl., ¶ 48.

substantially, insurance coverages and terms, policy periods, and premium rate bases differ among businesses and cannot be swept together into a single count for breach of contract, insurance ratemaking laws differ across states, and state actions and regulation regarding the pandemic differ. Both Fed. R. Civ. P. 23(d)(1)(D) and numerous courts recognize the propriety of eliminating class allegations at the outset, before wasteful and expensive class discovery and certification proceedings, where it is clear from the Complaint that no class can be certified as a matter of law.

### STATEMENT OF FACTS

Plaintiffs own and operate a mixed-use office building in Kansas City, Missouri.[3] Plaintiffs sue on behalf of themselves and other businesses around the country supposedly overcharged premiums during the COVID-19 pandemic for commercial liability insurance policies issued by Travelers.[4] Plaintiffs assert that they experienced a "radical reduction" in exposure to potential claims due to reduced operations as a result of "stay-at-home" orders that should have resulted in a corresponding reduction in their insurance premiums.[5]

Travelers issued Policy No. 680-8M563798-18-42 (the "2018 Policy") to Plaintiffs for the 11/01/2018 to 11/01/2019 policy period.[6] Plaintiffs attach parts of this 2018 Policy as Exhibit A to their Complaint.[7] The 2018 Policy is a Travelers Office Pac policy that provided a package of different coverages comprised of commercial general liability coverage (including coverage for bodily injury and property damage liability, personal and advertising liability, and medical payments), and also coverages for the office building, Business Personal Property, as well as

---

[3] Compl., ¶ 1.
[4] Compl., p. 1 & ¶¶ 30, 34.
[5] Compl., ¶¶ 30-34.
[6] Compl., ¶ 7.
[7] A complete copy is attached hereto as Exhibit 1.

employee benefits liability and data security claims.[8] In return for Travelers insuring all of these risks, Travelers charged, and Plaintiffs paid without objection, a single, composite premium in 2018.[9]

Plaintiffs attach and refer to their 2018 Policy – which expired before the pandemic had even occurred – but impliedly allege insurance coverage into 2020. Indeed, Plaintiffs did renew the 2018 Policy and have a similar policy in place currently, Policy No. 680-8M563798-19-42 (the "2019 Policy"),[10] attached hereto as Exhibit 2, running through November 1, 2020.

Just as in 2018, for the 2019 Policy, Plaintiffs were charged a single, composite premium for all coverages, including the commercial general liability coverage, and Plaintiffs expressly allege that Travelers calculated this premium based on its rules and rates, as the parties agreed it would do.[11] The Common Policy Conditions, which apply across the various coverages, state that Travelers will compute the premium based on Travelers' "rules, rates, rating plans, premiums and minimum premiums," and will do so on each renewal, continuation or anniversary of the effective date.[12] Thus, pursuant to these express terms, the policy premium is calculated at policy inception. That is exactly what Plaintiffs experienced in the premium calculations for their 2018 Policy and 2019 renewal policy. The Common Policy Conditions do not allow for or discuss a mid-term change in the premium or a mid-policy term premium audit (or an audit of any kind). The 2019 Policy remains in effect until November 2020.

---

[8] Ex. 1, pp. 71-113 of 211 (Commercial General Liability Coverage Part), pp. 11-70 of 211 (Businessowners Property Coverage Part), pp. 114-127 of 211 (Employee Benefits Liability Coverage Part), and pp. 128-158 of 211 (Cyberfirst Essentials Coverage Part).
[9] Compl., ¶ 37; Ex. 1, p. 2 of 211.
[10] To the extent the specific policy version matters, we attempt to refer to it by its defined name. To the extent it does not matter which version of the policy is being referenced, we generically refer to it as Plaintiffs' policy or the policy.
[11] Ex. 1, pp. 2 & 10 of 211; Ex. 2, pp. 2 & 87 of 288; and Compl., ¶ 61.
[12] Ex. 1, p. 10 of 211; Ex. 2, p. 87 of 288.

4

Plaintiffs reference the premium audit provision in the Commercial General Liability Coverage Form as the basis of their claims of "overcharge."[13] That premium audit provision states that, *at the close of each audit period*, the "[p]remium shown in this [the Commercial General Liability] Coverage Part as advance premium" will be subject to audit.[14] Plaintiffs do not point to a premium for the Commercial General Liability Coverage Part of the policy, as there is only a single, composite premium. Plaintiffs do not even attempt to address the fact that they have not yet reached the close of the audit period. Nor do Plaintiffs make any allegations about what any audit would reveal. They simply assume their conclusion that their premium, and that of all other Travelers Commercial General Liability policyholders, should be adjusted downward.

Plaintiffs speculate about rate factors that may apply to their policy. They discuss insurance in general, describe automobile insurance, and mention factors they believe should affect their premium for their Office Pac policy. But they do not identify or allege any factors that actually apply and that would change over the course of the policy period or upon the existence of a pandemic. There are none.

There is no need to speculate. There are no factors that would change the premium. The rating rules that Plaintiffs agree and acknowledge Travelers was required to apply in determining the premium are dispositive.[15] Those rules include factors such as Plaintiffs' zip code, square footage, presence of a sprinkler system, and the value of the Business Personal Property among other factors.[16] None of the factors considered in the exposure basis for Plaintiffs' policy change during the policy term or as a result of a pandemic. Similarly, the stay-at-home orders issued as a

---

[13] Compl., ¶ 38.
[14] *Id.*
[15] *See* Compl., ¶ 61.
[16] Ex. 3, Office Pac Rating Rules.

result of the COVID-19 pandemic had no effect on the fixed factors considered for Plaintiffs' premium. Based on Plaintiffs' location, they were likely subject to a March 21, 2020 "stay-at-home" order issued by Kansas City, Missouri Mayor Quinton Lucas and an April 3, 2020 "stay-at-home" order issued by Missouri Governor Michael Parson.[17] Those "stay-at-home" orders required that individuals in the respective jurisdictions "shall avoid leaving their homes" and that when individuals needed to leave their homes "to work, access food, prescriptions, health care, and other necessities, or to engage in outdoor activity, they should at all times practice social distancing."[18] The stay-at-home orders did not impact the zip code where Plaintiffs were located, their square footage, the presence of a sprinkler system in their building, or the value of their Business Personal Property. Moreover, the rules and rates define whether there is an audit right in a particular policy. Where an audit right exists in a policy, that right is expressly set forth in the applicable rules and rates.[19] The rules and rates for Plaintiffs' policy provide no such audit right.[20]

Plaintiffs also cannot deny that they have been getting, and still are being provided, the very insurance coverage they bargained for. Plaintiffs have not requested to cancel or modify their insurance coverage. Indeed, they appear to want the exact insurance coverage at the levels they purchased, which is exactly what they are receiving.

---

[17] Mayor of Kansas City, Second Amended Order 20-01, (Mar. 21, 2020), at Section III A. 2, https://www.kcmo.gov/home/showdocument?id=4065; Missouri Dep't of Health and Senior Servs., Stay At Home Order, (Apr. 3, 2020), https://governor.mo.gov/priorities/stay-home-order. This Court may take judicial notice of these government orders as they are a public record. *See Stahl*, 327 F.3d at 700.

[18] Mayor of Kansas City, *supra* note 16, at Section III A.2; Missouri Dep't of Health and Senior Servs, *supra* note 16.

[19] *See, e.g.*, Ex. 3, Office Pac Plus Rating Rules.

[20] For comparison, other policies in which an audit is provided in the rules can be seen at Ex. 3, Office Pac Plus Rating Rules. It is the fact that the rules for Plaintiffs' policy do not reference an audit that is dispositive here.

## ARGUMENT AND AUTHORITIES

Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates dismissal where a complaint fails to plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, Plaintiffs' "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Young v. Patel*, No. 08-0573-CV-W-HFS, 2010 WL 3893611 at *1 (W.D. Mo. Sept. 30, 2010) ("Although detailed factual allegations are not necessary, a complaint that contains labels and conclusions, and a formulaic recitation of the elements of a cause of action is not sufficient.") (internal quotations omitted). If the facts pleaded in Plaintiffs' Complaint render their claims "only conceivable, not plausible, the complaint must be dismissed." *Young*, 2010 WL 3893611 at *1.

"In addressing a motion to dismiss, courts need not accept as true factual assertions that are contradicted by the complaint itself, by documents upon which the pleadings rely, or by facts of which the court may take judicial notice." *Willstrop v. Prince Mktg. LLC*, No. 8:17CV350, 2018 WL 3201888, at *3 (D. Neb. Feb. 15, 2018) (internal quotations omitted). This includes Plaintiffs' insurance policies and the underlying rating rules that Plaintiffs reference in their Complaint. *See, e.g., Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (court may take judicial notice of documents "embraced in" the complaint and central to its allegations); *In re Express Scripts, Inc.*, No. 4:04CV1009 HEA, 2010 WL 2671456, at *1 n.1 (E.D. Mo. June 30, 2010) ("[t]he Court may take judicial notice of SEC filings and public records in considering the motion to dismiss"); *Florida State Bd. of Admin. v. Green Tree*

*Financial Corp.*, 270 F.3d 645, 663 (8th Cir. 2001) (noting that other courts have considered documents filed with the SEC on motions to dismiss); *Hendrickson v. United of Omaha*, No. 4:15CV3075, 2016 WL 389974, at *1 n.1 (D. Neb. Feb. 1, 2016) (finding that when an insurance policy is alleged to exist, it is encompassed by the complaint, and a court may consider it without converting the motion to dismiss into a motion for summary judgment.). Travelers' rules and rates are publicly filed and the Court can take judicial notice of the filings.[21] *See Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) (court may take judicial notice of public records without converting a motion to dismiss into one for summary judgment).[22] Also, as the rules and rate filings are affirmatively discussed in Plaintiffs' Complaint they are deemed incorporated and can be used in this motion to dismiss. *See U.S. ex rel. Kraxberger v. Kansas City Power & Light Co.*, 756 F.3d 1075, 1083 (8th Cir. 2014) ("[A] court may consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record.'").

When considering a motion to dismiss a class action prior to class certification, only the named plaintiff's claims, and not those of any putative class member, are considered. *Browe v. Evenflo Co., Inc.*, No. 14-4690 ADM/JJK, 2015 WL 3915868, at *4 n.1 (D. Minn. June 25, 2015); *see Cheng v. BMW of N. Am., LLC*, No. CV-12-09262, 2013 WL 3940815, at *4 (C.D. Cal. July 26, 2013).

---

[21] Travelers has attached the pertinent pages from its publicly filed rules and rates to its Brief as Exhibit 3. The entire rules and rates document on file with the department is over 750 pages. Travelers will provide the Court with a copy of the entire rules and rates document upon request.

[22] The rules and rates are publically filed with the Missouri Department of Insurance and publically available upon request. *See* Missouri Dep't of Commerce & Ins., Missouri General Instructions Document Property & Casualty (Aug. 2019), https://insurance.mo.gov/industry/filings/pc/documents/Missouri_Filing_Instructions_amp__Guidelines.pdf. ("Filings submitted to the Missouri Department of Commerce & Insurance are kept for "public access" and review..").

# I.    ALL CLAIMS FAIL TO STATE A CAUSE OF ACTION BECAUSE PLAINTIFFS ARE RECEIVING THE BENEFITS OF THEIR BARGAIN.

Plaintiffs allege that because Travelers calculated their premium pre-COVID, they have been overcharged. Plaintiffs claim that because they supposedly have lower exposure due to the effects of COVID-19 and the stay-at-home orders (allegations that are both untrue and particularly ill-suited to class treatment), they are entitled to a mid-policy term premium audit and reimbursement of at least a portion of their premium. But with respect to the obligations actually owed by Travelers under the 2019 Policy, there are no allegations of a specific contract provision that Travelers has not satisfied.[23] The 2019 Policy provides that "[i]n return for payment of the premium, [Travelers] agree with [Plaintiffs] to provide the insurance afforded by a Coverage Part forming part of this policy." The 2019 Policy requires that Travelers compute all premiums in accordance with its rules and rates in effect "[o]n each renewal, continuation or anniversary of the effective date of this policy," and Plaintiffs allege Travelers did just that.[24]

Plaintiffs' demand for a mid-term repricing of their premium violates well-established insurance principles. A premium is earned when there is any possibility of an insured risk. *See, e.g., Randall v. W. Life Ins. Co.*, 336 S.W.2d 125, 129 (Mo. App. 1960) ("[T]he insurer is entitled to a premium it has earned while its policy is in force . . . Where a valid contract of insurance has been effectuated, and the contract or policy has attached to the risk insured against, insured becomes liable for premiums earned during the life of the policy or contract of insurance"); Cal. Ins. Code § 482 (if "the insurer has been liable for any period, however short,

---

[23] To survive a motion to dismiss a breach of contract claim, a plaintiff must plead facts to demonstrate the existence of a valid contract and a breach of that contract. *Pietoso, Inc. v. Republic Servs., Inc.*, No. 4:19-CV-397-RLW, 2020 WL 224516, at *1 (E.D. Mo. Jan. 15, 2020). Because the 2018 Policy expired by its own terms in November 2019 – several months before the stay-at-home orders allegedly affected Plaintiffs – the face of Plaintiffs' Complaint necessarily fails to establish a valid contract that could have been breached. This alone is grounds to dismiss the Complaint. But the flaws in Plaintiffs' Complaint are much more fundamental than identifying an expired policy, and thus the Court has ample other grounds to end this matter once and for all.

[24] Compl., ¶ 61; Ex. 2, p. 87 of 288.

the insured is not entitled to a return of premiums" for the particular risk). Here, despite Plaintiffs' conclusory allegation that they have a lower risk of exposure, there remains the very real possibility of covered claims. All potential claims regarding the building, building property, data, and employee benefits are wholly unaffected by Plaintiffs' business circumstance or the pandemic. Even if a loss were arguably to become less likely at some point during the policy term, that does not change the fact that Travelers is still attached to the risk.

Absent a statute or an express or implied agreement to the contrary and barring some change to the policy term (*e.g.,* cancellation) or the coverage (*e.g.*, an additional insured or property added to a policy), an insured may not renegotiate their premium and have any part of his or her premium returned once the risk attached. *Fleetwood Acres v. Fed. Hous. Admin.*, 171 F.2d 440, 442 (2d Cir. 1948) ("[T]he ordinary rule is that an insured may not have any part of his premium returned once the risk attaches, even if it eventually turns out that the premium was in part unearned, unless there is an agreement to that effect."); 5 Couch on Ins. § 79:7. This rule is based upon just and equitable principles, for the insurer has, by taking upon itself the peril, become entitled to the premium. *N. New York Sav. Bank v. Fed. Sav. & Loan Ins. Corp.*, 515 F.2d 1355, 1359 n.5 (D.C. Cir. 1975); 5 Couch on Ins. § 79:7. Just like an insurer cannot be allowed to suddenly charge an additional premium if a potential claim becomes imminent (*e.g.,* a hurricane about to make landfall), an insured is not entitled to refunded premium in the event they believe no covered claim will now come to pass (without cancelling the policy or changing the coverage).

There are no statutes or regulations in Missouri providing for the return of a premium such as Plaintiffs' and no authorities in Missouri ordered or even suggested that premiums be discounted or returned as a result of the pandemic. In fact, an insurer that wants to put a premium relief strategy in place must file rules and rates documenting the strategy with the Missouri

Department of Insurance. Mo. Dept. Ins. Bulletin 20-08 (April 10, 2020) available at https://insurance.mo.gov/laws/bulletin/documents/Bulletin20-08ExpeditiousReviewofSERFFFilingsforCOVID-19PremiumRelifeMeasures4-10-2020.pdf.

Plaintiffs do not allege any change in the terms of their policy or coverage that would result in a premium reduction. Consequently, the premium was earned once the risk attached and thus there is no basis for any refund under Missouri law or the terms of the 2019 Policy. *See, e.g., Randall*, 336 S.W.2d at 129; *Fid. Sec. Life Ins. Co. v. Dir. of Revenue*, 32 S.W.3d 527, 531 (Mo. 2000) ("A 'premium' is the consideration paid by an insured to an insurer for a contract of insurance.").

All parties received the "benefit of the bargain" of the earned premium and the risk attaching, such that Travelers was on the hook (and still is) for any covered claims that may be filed against Plaintiffs. Plaintiffs have received exactly what they paid for, and therefore they have failed to state any claim upon which relief can be granted.

## II. PLAINTIFFS' PREMIUM FACTORS CANNOT CHANGE AS A RESULT OF THE PANDEMIC, AND TRAVELERS' FILED RATING RULES DO NOT PROVIDE AN AUDIT RIGHT.

Plaintiffs expressly allege that Travelers used it rules and rates to determine Plaintiffs' exposure to calculate premiums.[25] This is of course the case because Plaintiffs agreed that the filed rules and rates determine their premium. The Common Policy Declarations in Plaintiffs' policy set forth a single premium for all the insurance coverages provided and the Common Policy Conditions expressly state the one premium is to be calculated per Travelers' rules and rates on the renewal, continuation or anniversary of the effective date of the policy.[26] A review of the rules and rates alone is dispositive of this lawsuit.

---

[25] Compl., ¶ 61.
[26] Ex. 2, p. 87 of 288.

Given the breadth of insurance coverages purchased by Plaintiffs within their Policy, the applicable rules and rates discuss general, building and business property factors (zip code, square footage, presence of a sprinkler system, the value of the Business Personal Property among other factors, none of which are the least bit affected by the pandemic or ongoing operations inside the building).[27] The zip code for the office building will not change, nor will the square footage of the building. The presence of sprinklers does not depend on a pandemic. The Office Pac rules and rates clearly show that the rates are determined by the relevant but fixed information concerning the insured property, but not factors like miles driven (that might affect an automobile insurance policy) or numbers and classifications of employees (that might affect a workers' compensation policy).[28] While Plaintiffs claim that factors such as payroll and gross sales are considered in establishing premium amounts, the applicable rules and rates for Plaintiffs' policy do not consider those factors.[29] There are simply no delineated premium factors that would or could change mid-term, let alone due to a pandemic or stay-at-home orders. Since Travelers is alleged to have used its rules and rates which are directly incorporated into Plaintiffs' contract and a part thereof, and because the exposure basis provided for Plaintiffs' policy under those rules is fixed, there is simply no basis to conduct a premium audit, particularly mid-policy term, nor would any audit change the premium. Tellingly, Plaintiffs fail to allege a single one of these factors that they contend should change based on the Missouri stay-at-home orders and the COVID-19 pandemic. Because the rules and rates incorporated into the contract do not provide for an auditable exposure basis, an audit here would not result in a premium reduction.

---

[27] Ex. 3, Office Pac Rating Rules.
[28] *Id.*
[29] *Compare* Ex. 3, Office Pac Rating Rules, and Ex. 3, Office Pac Plus Rating Rules (considering factors such as annual sales).

Moreover, while Plaintiffs' Complaint hinges on an alleged audit right, such a right does not even exist for Plaintiffs' policy. There is no common policy provision for a mid-term or even an end-term premium audit. The premium audit provision that Plaintiffs point out is in one coverage part of the Policy, the Commercial General Liability Coverage Part, and it describes a possible audit for the "Premium shown in this Coverage Part…" that applies "[a]t the close of each audit period…"[30] The Common Policy Declarations do not reference a premium that is subject to such an audit, so there is no relevant "[p]remium shown in this [Commercial General Liability Coverage] Part" of the Policy, and the Common Policy Conditions do not mention or anticipate any premium audit process at all. Rather, they simply envision a calculation of the premium forward-looking upon the renewal of the 2019 Policy.

The rules and rates define whether there is an audit right in a particular policy. Where an audit right exists in a policy, that right is expressly set forth in the applicable rules and rates.[31] The rules and rates for the 2019 Policy provide no such audit right.[32] Since Travelers is alleged to have used its rules and rates, as the parties agreed it would do in the 2019 Policy, and because those rules do not call for an audit, there is simply no basis to conduct a premium audit.

But even if there were an obligation under the 2019 Policy to conduct a premium audit, that obligation would not arise until after the policy period, which does not expire until November 2020. Thus, even under Plaintiffs' own erroneous reading of the policy, this lawsuit is fatally premature. Because an audit would not change matters at all and because it is premature, Plaintiffs' claims should be dismissed.

---

[30] Ex. 2, p. 162 of 288.
[31] *See, e.g.*, Ex. 3, pp. Office Pac Rating Rules.
[32] *Id.* For comparison, from the same public filing, the rules and rates for another policy in which an audit is provided in the rules can be seen at Ex. 3, Office Pac Plus Rating Rules. It is the fact that the rules for Plaintiffs' policy do not reference an audit that is dispositive here.

## III. TO CHALLENGE TRAVELERS' RULES AND RATES, PLAINTIFFS HAVE FAILED TO EXHAUST ADMINISTRATIVE REMEDIES.

Plaintiffs admit that the premium Travelers charged was the premium authorized by the rules and rates Travelers filed with the Missouri Department of Insurance and that the parties agreed would apply.[33] However, Plaintiffs claim they have "overpaid" their premium in relation to their alleged exposure, were "overcharged" for premium, paid an "inequitable" premium, paid a premium that is not "commensurate with the level of insurance risk of Plaintiffs' business," and paid a premium that resulted from Travelers' application of "its rules and rates" that did not factor in COVID-19.[34] Thus, Plaintiffs' real issue is not with any premium audit, which would not change the premium charged, but with the rules and the rates applied. Yet it is these filed rules and rates that restrict Travelers from offering Plaintiffs the relief they seek.

In challenging insurance rates, Missouri law sets forth an exclusive administrative remedy. *McClain v. Shelter Gen. Ins. Co.*, No. 97-1139-CV-W-FJG, 2007 WL 844769, at *7-8 (W.D. Mo. Mar. 16, 2007) *aff'd sub nom. Saunders v. Flowers*, 537 F.3d 961 (8th Cir. 2008). Specifically, if an insured believes it has been "aggrieved by any rate charged, rating plan, rating system, or underwriting rule followed or adopted by an insurer," it must first send a written request to the insurer "to review the manner in which the rate, plan, system, or rule has been applied with respect to insurance afforded him." Mo. Rev. Stat. § 379.348. If the insurer denies such request or fails to grant it in 30 days, the insured "may file a written complaint and request for hearing with the [D]irector[.]" *Id.* The Director may then start an investigation and hold a public hearing pursuant to Mo. Rev. Stat. § 379.346. *Id.* The Director may issue an order and may impose monetary penalties if he or she has reason to believe there is a rate violation. Mo. Rev. Stat. § 379.346.

---

[33] Ex. 1, p. 10 of 211; Ex. 2, p. 87 of 288; and Compl., ¶ 61.

"Missouri follows the exhaustion of administrative remedies doctrine, which provides that where a remedy before an administrative agency is available, relief must be sought by exhausting this remedy before the courts will act." *Lederer v. Dir. of Div. of Aging*, 865 S.W.2d 682, 684 (Mo. Ct. App. (W.D.) 1993).[35] Because Plaintiffs have not complied with Missouri's administrative procedures to challenge Travelers charging premiums in accordance with its filed rules and rates, this case should separately be dismissed.[36] As explained above, the Missouri Department of Insurance has already exercised authority over any pandemic rating issues. *See* supra Section I.

Even assuming Plaintiffs have a private right of action to bring a lawsuit without first exhausting administrative remedies, Plaintiffs' claims fail as Travelers is required to charge the rates on file with the Missouri Department of Insurance, and it has done just that. Plaintiffs implicitly acknowledge Travelers is obligated to make regulatory filings of its rules and rates with the State of Missouri.[37] They allege the filings are "for informational purposes only" but what they fail to allege is that Travelers is not free to disregard its filings. Otherwise, there would be no point in the State of Missouri requiring filed rules and rates. And it would impermissibly render nugatory the comprehensive regulatory review scheme set forth above.

Further, and again assuming Plaintiffs have a private right of action, which they do not, to the extent Plaintiffs claim they were charged an excessive rate, they have failed to state a claim.

---

[34] Compl., ¶¶ 34, 93, 81, 87, 67-69.

[35] *Parker v. City of St. Joseph*, 167 S.W.3d 219, 221 (Mo. Ct. App. 2005) (a party must complete "every step" of the administrative process in order to fully exhaust); *Shafinia v. Nash*, 372 S.W.3d 490, 493 (Mo. Ct. App. (W.D.) 2012) (Missouri law requires pursuit of administrative remedies as a pre-requisite to judicial review).

[36] In addition, and as explained above, there is no contractual right to audit the policy premium and adjust the premium based on an audit. Thus, Travelers is charging a premium based on its filed rate and if the Court were to grant the relief Plaintiff is seeking, and reduce the premium, that would run afoul of the filed-rate doctrine. *Saunders v. Farmers Ins. Exchange*, 440 F.3d 940, 943 (8th Cir. 2006) (the filed-rate doctrine "prohibits a regulated entity from discriminating between customers by charging a rate for its services other than the rate filed with the regulatory agency, and it preserves the authority and expertise of the rate-regulating agency by barring a court from enforcing the statute in a way that substitutes the court's judgment as to the reasonableness of a regulated rate").

Under Missouri law, rates charged by insurers "shall not be excessive[.]" Mo. Rev. Stat. § 379.318(4). The relevant Missouri statute provides that "No rate shall be held to be excessive unless such rate is unreasonably high for the insurance coverage provided **and** a reasonable degree of competition does not exist in the area with respect to the classification to which such rate is applicable. *Id.* (emphasis added). Plaintiffs fail to allege that "a reasonable degree of competition does not exist in" Kansas City, Missouri with respect to the type of insurance they purchased. Consequently, Plaintiffs' claims should be dismissed.

IV. **PLAINTIFFS' CLAIMS FOR BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING (COUNT TWO), UNJUST ENRICHMENT (COUNT THREE), AND MONEY HAD AND RECEIVED (COUNT FOUR) SHOULD BE DISMISSED.**

In Counts Two, Three, and Four, Plaintiffs essentially allege that they were treated unjustly because Travelers failed to conduct a voluntary and unscheduled mid-term premium audit and issue a premium reimbursement and, as a result, Travelers has unreasonably benefited from a purported overpayment of premium. To sustain a claim for unjust enrichment under Missouri law, Plaintiffs must plead: (1) a benefit conferred by plaintiff, (2) defendant's appreciation of the benefit; (3) acceptance and retention of the benefit without payment would be unjust. *Rental Co. LLC v. Carter Group, Inc.*, 399 S.W.3d 63, 67 (Mo. Ct. App. 2013). To sustain a claim for money had/received under Missouri law, Plaintiffs must plead: (1) the defendant received or obtained possession of the plaintiff's money; (2) the defendant thereby appreciated a benefit; and (3) the defendant's acceptance and retention of the money was unjust. *See Pittman v. City of Columbia*, 309 S.W. 3d 395, 402 (Mo. Ct. App. (W.D.) 2010).

Plaintiffs' claim for unjust enrichment and equitable claims fail because Plaintiffs have not alleged specific facts demonstrating that it would be unjust for Travelers to retain the

---

[37] *See* Compl., ¶ 36.

premium it was paid in return for taking on Plaintiffs' risk. *See Miller v. Horn*, 254 S.W.3d 920, 924–25 (Mo. Ct. App. 2008) ("Unjust enrichment can occur only when a person *retains a benefit* without paying its reasonable value.") (emphasis in original); *Gerke v. City of Kansas City*, 493 S.W.3d 433, 438-39 (Mo. Ct. App. 2016) (affirming dismissal of plaintiff's claim for unjust enrichment and money had and received); *Decoursey v. Am. Gen. Life Ins. Co.*, No. 13-01221-CV-W-GAF, 2014 WL 12600954, at *7 (W.D. Mo. Apr. 15, 2014) (In order to allege a plausible claim for breach of the covenant of good faith and fair dealing, "a plaintiff must show that the defendant exercised a judgment conferred by the express terms of the agreement in such a manner as to evade the spirit of the transaction or so as to deny the plaintiff the expected benefit of the contract." (internal quotations omitted)). Indeed, as explained in Section I, all claims should be dismissed based on the benefit of the bargain and the fact that Plaintiffs actually received what they bargained for.

## V. PLAINTIFFS' CLAIMS FOR DECLARATORY OR INJUNCTIVE RELIEF SHOULD BE DISMISSED.

In Count Five, Plaintiffs seek a declaration that Travelers has breached the 2019 Policy, and an injunction preventing Travelers from continued breaches in regards to its purported "overcharging for premiums" and requiring Travelers to comply with the contractual terms regarding premium calculations.[38] To maintain an action for declaratory judgment, the plaintiff must allege: (1) a justiciable controversy; (2) a legally protectable interest; (3) a controversy ripe for judicial determination; and (4) an inadequate remedy at law. *Pietoso*, 2020 WL 224516, at *3. A claim for declaratory judgment is not appropriate where plaintiffs have an adequate remedy at law. *Id.*; *see Blair v. City of Hannibal*, 194 F. Supp. 3d 875, 885 (E.D. Mo. 2016) (dismissing claim for declaratory relief because plaintiffs had adequate remedy at law). In

---

[38] Compl., ¶¶ 101-02.

Missouri, "[i]t is well-settled that declaratory relief is not proper where the real cause of action is an action at law for breach of contract." *Pietoso*, 2020 WL 224516, at *3 ("A petition seeking declaratory judgment that alleges breach of duties and obligations under the terms of a contract and asks the court to declare those terms breached is nothing more than a petition claiming breach of contract." (citations omitted)). To succeed on an action for declaratory judgment requires a viable underlying cause of action. *OS33 v. CenturyLink Commc'ns, L.L.C.*, No. 4:17-CV-2603 CAS, 2018 WL 2267910, at *4 (E.D. Mo. May 17, 2018). Where a plaintiffs' underlying substantive claim fails, its request for declaratory judgment fails as well. *Id*.

But more fundamentally, Plaintiffs are not entitled to a declaration that Travelers has breached its obligations to Plaintiffs because Plaintiffs allege that Travelers has charged Plaintiffs premium consistent with its rules and rates, and they are not entitled to any mid-term premium audit or adjustment under the express terms of the 2019 Policy. Thus there is no additional remedy that can apply here that would not already apply under Plaintiffs' failed claim for breach of contract.

As for the injunction claim, an injunction is a remedy, not a cause of action. *State ex rel. Gardner v. Stelzer*, 568 S.W.3d 48, 51 (Mo. Ct. App. 2019) (failure to plead elements of viable cause of action provided no basis for injunction). It also must be based on a recognized and sufficiently pleaded legal theory. *Id*. Where there is an adequate remedy at law, injunctive relief will not be granted. *Harris v. Union Elec. Co.*, 766 S.W.2d 80, 86 (Mo. en banc 1989).

Here, Plaintiffs have not alleged facts showing there is an inadequate remedy at law. Plaintiffs assert a breach of contract claim seeking to recover monetary damages stemming from the purported breach by Travelers. While Plaintiffs allege they "do not have another adequate remedy at law," they fail to allege how their claim for damages is an insufficient remedy for the alleged harm. If Plaintiffs were to succeed on their claim for breach of contract, they would be

18

entitled to legal relief, and thus the injunction is superfluous. If Plaintiffs fail on their claim for breach of contract, there is no underlying legal basis to award injunctive relief. Count Five should be dismissed because, under any theory, it cannot stand alone.

## VI.      THE COURT SHOULD DISMISS OR STRIKE THE CLASS ALLEGATIONS AT THE PLEADINGS STAGE.

Plaintiffs allege a class consisting of every commercial liability policyholder of Travelers across the United States – regardless of size, type of business, type of policy, or the specific effects (positive or negative) of the pandemic on their business. Should any claims survive the initial motion to dismiss arguments, the class allegations in this complaint certainly should not. Fed. R. Civ. P. 23(d)(1)(D) expressly provides for elimination of the class allegations on the pleadings in appropriate circumstances, and Rule 23(c)(1)(A) provides for assessment of class allegations at an early practicable time. Courts have made it clear that dismissing or striking facially deficient class allegations is entirely appropriate. *Johnson v. Atkins Nutritionals, Inc.*, No. 2:16-CV-04213-MDH, 2018 WL 9868535, at *1 (W.D. Mo. Apr. 4, 2018) ("Nothing in the Federal Rules of Civil Procedure prohibit a defendant from filing a pre-emptive motion to deny class certification."); *Kraetsch v. United Serv. Auto. Ass'n*, No. 4:14-CV-264-CEJ, 2015 WL 1457015, at *4 (E.D. Mo. Mar. 30, 2015) ("Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings.") (citation and quotation omitted). *See also McCrary v. Stifel, Nicolaus & Co., Inc.,* 687 F.3d 1052, 1059 (8th Cir. 2012) ("[C]lass claims that fail to meet the requirements of Rule 23 may be properly dismissed by granting a Rule 12(b)(6) motion."); *Pilgrim v. Universal Health Card, LLC,* 660 F.3d 943, 950 (6th Cir. 2011) (affirming district court's order striking class allegations); *Moon v. Cty. of Orange*, No. SACV 19-258 JVS (KESX), 2020 WL 2332164, at *2-3 (C.D. Cal. Mar. 18, 2020) (noting it is entirely proper to assess the viability of class allegations from the pleadings and without discovery; striking class allegations where, *inter alia,*

19

individualized issues necessarily predominated); *Flint v. Ally Fin. Inc.*, No. 3:19-CV-00189-FDW-DCK, 2020 WL 1492701, at *3 (W.D.N.C. Mar. 27, 2020) (same principle); *Vann v. Dolly, Inc.*, No. 18 C 4455, 2020 WL 902831, at *2, *5 (N.D. Ill. Feb. 25, 2020) ("the class allegations in the complaint 'are facially and inherently deficient ... a motion to strike class allegations can be an appropriate device to determine whether the case will proceed as a class action."); *Coleman v. Sears Home Improvement Prod. Inc*., Civil Action No. 16-2537, 2017 WL 1064965, at *7 (E.D. La. Mar. 20, 2017) (the "Court finds that it is facially apparent from the pleadings that Plaintiffs' class action allegations are deficient and cannot satisfy the basic requirements to certify a class action."); *Stokes v. CitiMortgage, Inc.*, No. CV 14-00278 BRO (SHx), 2015 WL 709201, at *4, *10 (C.D. Cal. Jan. 16, 2015) (same principle); *Bearden v. Honeywell Int'l, Inc.*, No. 3:09-01035, 2010 WL 1223936, at *9-11 (M.D. Tenn. Mar. 24, 2010) (same principle); *Ross–Randolph v. Allstate Ins. Co.,* Civil No. DKC–99–3344, 2001 WL 36042162, at *4 (D. Md. May 11, 2001) (same principle); *Saunders v. BellSouth Advert. & Pub. Corp.,* No. 98-1885-CIV, 1998 WL 1051961, at *1 (S.D. Fla. Nov. 10, 1998) (same principle); *Hill v. Wells Fargo Bank, N.A.,* 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013) (same principle); *Alaska Airlines, Inc. v. Carey*, No. C07-5711 RBL, 2008 WL 2725796, *6 (W.D. Wash. July 11, 2008), *aff'd,* 395 Fed. App'x 476 (9th Cir. 2010) (same principle); *Lumpkin v. E.I. Du Pont de Nemours & Co*., 161 F.R.D. 480, 481-82 (M.D. Ga. 1995) (same principle); *Advanced Acupuncture Clinic, Inc. v. Allstate Ins. Co.*, Civil Action No. 07-4925(JAP), 2008 WL 4056244, *7, *15 (D.N.J. Aug. 26, 2008), *aff'd on other grounds sub nom, St. Louis Park Chiropractic, P.A. v. Fed. Ins. Co.*, 342 F. App'x 809 (3d Cir. 2009) (same principle).

To warrant class treatment, Plaintiffs must demonstrate that they can meet Rule 23(a)'s commonality and typicality requirements. In addition, because the principal relief Plaintiffs seek is monetary in nature, they also must demonstrate that they meet Rule 23(b)(3)'s predominance

and superiority requirements. Even at this early stage in the litigation, Plaintiffs cannot plausibly allege a legitimate class action. It is clear on the face of Plaintiffs' Complaint that they can meet none of those class action prerequisites.[39]

### A. Plaintiffs Cannot Establish Rule 23's Commonality or Typicality Requirements.

Plaintiffs' class allegations are fatally deficient given their inability to establish Rule 23(a)'s commonality and typicality requirements. Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury," which "does not mean merely that they have all suffered a violation of the same provision of law." *Dukes*, 564 U.S. at 350 (citations and footnotes omitted). Rather, their claims "must depend upon a common contention [that must be of such] a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 340. "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* at 350 (emphasis in original).

None of the questions Plaintiffs posit as "common" meets the above criteria. Although Plaintiffs' allegations suggest a bevy of supposedly "common" questions,[40] none will resolve an

---

[39] This Motion addresses only the legal sufficiency of Plaintiffs' class allegations on the face of the Complaint and in no way concedes that Plaintiffs have otherwise met the stringent requirements of Rule 23. Should the matter ultimately proceed to a class certification hearing, Plaintiffs will be required to "affirmatively demonstrate" and "to prove" that all the class certification prerequisites "in fact" are met. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). However, as the above cases show, it is appropriate to dispose of the allegations now given the allegations of the Complaint, which themselves demonstrate that the Rule 23 prerequisites to class certification cannot be established as a matter of law.

issue that is central to the validity of each one of the claims in one stroke, let alone generate common answers apt to drive the resolution of the litigation. For example, whether and how Travelers calculated premiums for each putative class member will require examination of individual insurance policies and evidence specific to that individual.[41] Whether Plaintiffs or any putative class member overpaid (or underpaid) premiums in the wake of COVID-19 business restrictions requires assessment of each individual's unique circumstances, including whether each individual's policy is even auditable in the first instance.[42] There simply is no one-size-fits-all "common answer" to any of the purported common questions that Plaintiffs allege cover all putative class members. *See, e.g., Webb v. Exxon Mobil Corp.*, 856 F.3d 1150, 1156 (8th Cir. 2017) ("Pivotal to commonality . . . is whether the class members have suffered the same injury[.]") (citation and internal quotations omitted).

Plaintiffs claim they closed their building beginning in mid-March 2020, purportedly due to the "effective period for the state-at-home orders," which resulted in a "loss of revenue to some of Plaintiffs' tenants" and a lower "exposure rate" for Plaintiffs.[43] However, other insureds

---

[40] Plaintiffs allege the following common questions, ***none*** of which can be answered without individualized scrutiny of each class member's facts and circumstances: (a) Whether Defendant calculated premiums based on factors common to the Class; (b) Whether the presence of those factors were materially affected or diminished due to the COVID-19 pandemic; (c) Whether, in light of the COVID-19 pandemic, Plaintiffs and Class members overpaid their premiums for general commercial liability; (d) Whether Defendant's retention of those overpaid premiums constitutes a wrongful financial windfall; (e) Whether Travelers violated its obligations and duties under the Policy; (f) Whether the case may be maintained as a class action under Fed. R. Civ. P. 23; (g) Whether and to what extent Class members are entitled to damages and other monetary relief; (h) Whether and to what extent Class members are entitled to equitable relief, including restitution, rescission, a preliminary and/or a permanent injunction; and (i) Whether and to what extent Class members are entitled to attorneys' fees and costs. Compl., ¶ 53.

[41] In addition, the state regulations and requirements that Travelers is subjected to as an insurer, including those relating to its filed rules and rates, vary dramatically across jurisdictions.

[42] For instance, we now know that Plaintiffs' policy is not auditable and the premium is not subject to change during the policy term.

[43] Compl., ¶¶ 30-34.

may not have closed their businesses at all,[44] some may have partially closed, and some may have had increased risk exposure – either due to COVID-19 or wholly unrelated causes unique to their particular businesses.[45] Plaintiffs fail to allege any "common" question that will result in a common answer for Plaintiffs' core liability and damages theory—*i.e.*, that the COVID-19 pandemic resulted in lower liability exposure for any business subject to a "stay-at-home" order and therefore that all such policyholders paid too much premium. Rather, there are only individual questions which will have varying answers depending on the individual facts related to each putative class member.

Moreover, in their Complaint, Plaintiffs refer to stay-at-home *orders*, not just a single order in a single locale. Different states, counties, cities, and municipalities have issued their own orders, each of which may have a vastly different impact or may or may not apply to putative class members depending on their location, the nature of their business, and the scope of the order.[46] This further defeats any conceivable showing of commonality. Each and every stay-at-home order would have to be construed and examined, as would its effect on each putative class member's business.

---

[44] The stay-at-home orders permitted a wide range of businesses and business activities to continue, including healthcare services, groceries, markets, convenience stores, food producers, gas stations, restaurants (for delivery or carry out), banks, educational institutions, laundromats, delivery services, airlines, taxis and other transport services, and "businesses that supply other essential businesses with the support or supplies necessary to operate." Even businesses otherwise closed were permitted to "continue operations consisting exclusively of employees, contractors, or other agents of businesses performing activities at their own residences or places of rest Mayor of Kansas City, *supra* note 16, at Section III A.2. This Court may take judicial notice of the KCMO stay-at-home order as it is a public record. *See Stahl*, 327 F.3d at 700.

[45] *See, e.g.,* U.S. Census Bureau, Small Business Pulse Survey https://portal.census.gov/pulse/data/#data (as of August 20, 2020, national data measuring effect of changing business conditions due to pandemic showed while some businesses had decreased operating capacity relative to a year ago, 37.5% of businesses had no change in operating capacity, 1.5% increased operating capacity by 50% or more and 5.9% increased operating capacity by less than 50%).

[46] In addition, some putative class members may reside in states where an emergency order was issued on auditable policies that may require different treatment for their policies. *See, e.g.,* La. Dep't of Ins. Office of the Commissioner, LAC 37:XI. Chapter 39 § 3905 (2020), https://ldi.la.gov/docs/default-source/documents/legaldocs/rules/rule39-cur-mid-termauditofauditable.. This Court may take judicial notice of Louisiana Emergency Rule 39 as it is a public record. *See Stahl*, 327 F.3d at 700 (court may take judicial notice of public records without converting a motion to dismiss into one for summary judgment).

Commonality aside, Plaintiffs also cannot satisfy Rule 23's typicality requirement. *See, e.g., Canady v. Allstate Ins. Co.*, No. 96CV0174, 1997 WL 33384270, at *6 (W.D. Mo. June 19, 1997), *aff'd*, 162 F.3d 1163 (8th Cir. 1998) ("Because the commonality requirement is not met, it logically follows that plaintiffs cannot meet the typicality requirement of Rule 23(a)(3)."). Based on Plaintiffs' location, they were likely subject to a March 21, 2020 "stay-at-home" order issued by Kansas City, Missouri's Mayor.[47] That order permitted a wide range of businesses and business activities to continue.[48] The impact of the pandemic and any "stay-at-home" order on Plaintiffs' operation of a multi-use office building is hardly "typical" of what other businesses of different sizes and in different industries or market sectors would have experienced. Beyond that, the "stay-at-home" orders entered by each municipal, county or state jurisdiction differed in their restrictions, exclusions, exceptions and duration. Plaintiffs' experience operating a mixed-use office building in Kansas City can hardly be said to be "typical" of a grocery chain in Memphis, Tennessee, or a delivery service in Canton, Ohio, or a pharmacy in Flagstaff, Arizona, or a sporting goods store in Lubbock, Texas, or even a bicycle shop in St. Louis.[49] So Plaintiffs cannot establish Rule 23(a)'s commonality or typicality requirements even at the initial pleading stage of the case, and on that basis alone, the class allegations should be stricken.

---

[47] Mayor of Kansas City, *supra* note 16, at Section III A.2. This Court may take judicial notice of the KCMO stay-at-home order as it is a public record. *See Stahl*, 327 F.3d at 700.

[48] Mayor of Kansas City, *supra* note 16, at Section III A.2.

[49] *See, e.g.,* T. Davis, *Plumber Sees Increase in Business Since COVID-19*, KFVS News (Aug. 18, 2020), *https://www.kfvs12.com/2020/08/18/plumber-sees-increase-business-since-covid-/* (Missouri plumber is "busiest he's been in 10 years of service."); J. Boyum, *Next Normal: Longview music store sees increase in business during COVID-19 pandemic*, KLTV News (Aug. 6, 2020) *https://www.kltv.com/2020/08/06/webxtra-longview-music-store-sees-increase-business-during-covid-pandemic/* (Aug. 6, 2020) (Texas music store has increased business during COVID-19); A. Mullen, *Bike boom: Washtenaw shops see huge increase in business amid coronavirus stay-at-home orders*, MLive.com (June 1, 2020), *https://www.mlive.com/news/ann-arbor/2020/06/bike-boom-washtenaw-shops-see-huge-increase-in-business-amid-coronavirus-stay-at-home-orders.html* (bike shops in Ann Arbor, Michigan and across the country experiencing business boom). This Court may take judicial notice of these newspaper articles as they are considered public record. *See Petition of Lauer,* 788 F.2d 135, 137 (8th Cir. 1985) (taking judicial notice of letters appearing in newspapers); *Arthur v. Medtronic, Inc.*, No. 4:14-CV-52 CEJ, 2014 WL 3894365, at *1 (E.D. Mo. Aug. 11, 2014) (taking judicial notice of documents found on FDA's public website).

**B.    Plaintiffs Cannot Satisfy 23(b)(3)'s Predominance Requirement.**

Where, as here, the principal relief sought is monetary in nature, class certification under Rule 23(b)(1) or 23(b)(2) is improper. *Casey v. Coventry Healthcare of Kansas, Inc.*, No. 08-0201-CV-W-DGK, 2010 WL 3636140, at *4 (W.D. Mo. Sept. 10, 2010) (certification under Rule 23(b)(1)(A) inappropriate where the primary relief sought is monetary damages); *Barfield v. Sho-Me Power Elec. Co-op.*, No. 11-CV-04321-NKL, 2013 WL 3872181, at *5 (W.D. Mo. July 25, 2013), *aff'd sub nom. Barfield v. Sho-Me Power Elec. Coop.*, 852 F.3d 795 (8th Cir. 2017) ("Certification under Rule 23(b)(2) is meant for cases challenging the propriety of the behavior of the defendant, not for actions primarily asserting monetary damages." (internal quotations omitted)). As the Supreme Court has held, "individualized monetary claims belong in Rule 23(b)(3)." *Dukes*, 564 U.S. at 362.

Accordingly, in addition to satisfying Rule 23(a)'s commonality and typicality requirements, Plaintiffs also must satisfy Rule 23(b)(3)'s predominance and superiority requirements. *Id.* As a matter of law, those requirements cannot be met here because of the highly individualized factors that defeat commonality and typicality. There can be no "predominance" of common issues where each class member's entitlement to relief depends on an individualized inquiry into what "stay-at-home" orders may have been applicable, what effect they may or may not have had on the business, and what impact they may have had with respect to the individual risk and in what amount.

*In re State Farm Fire & Cas. Co.*, 872 F.3d 567, 572 (8th Cir. 2017) provides a good example. There, the plaintiff generally alleged the defendant insurer's claims adjustment practices were unlawful. The district court granted class certification, finding common questions predominated, noting (i) "the overarching, undisputed, and common fact of State Farm's practice of withholding payment from all its insureds for the depreciated labor component," and (ii) the

court's prior resolution of "a central legal question . . . that the terms 'actual cash value' and 'depreciation' as used in State Farm's policy are ambiguous and must be construed in favor of the insureds." *Id.* at 572 (quoting district court). The Eighth Circuit reversed, stating:

> [A]lthough we do not rule out the possibility that State Farm's use of the Xactimate estimating methodology would produce an unreasonable estimate of the actual cash value of some partial losses, this issue may only be determined based on all the facts surrounding a particular insured's partial loss. Thus, there are *no* predominant common facts at issue, and the decision certifying a class . . . must be reversed. *Id.* at 577.

So, even if the insurer's claims adjustment practice may have been uniformly flawed, there could be no class given the predominating individualized issues that would have to be resolved to determine whether the insurer's coverage decision was or was not correct. The same would be true with respect to determining whether a premium audit or adjustment was necessary under each insured's policy—*i.e.*, whether the insured's risk exposure decreased or increased in any given case can only be determined based on all the facts surrounding that particular insured's circumstances. *See also In re Katrina Canal Breaches Litig.*, 401 Fed. App'x 884, 886-87 (5th Cir. 2010) (class certification not appropriate where each claim turns on reasonableness of Defendants' decision to make payments to each individual Plaintiff. "Such a determination is a fact-specific inquiry that will vary based on the individualized circumstances of each claim."); *Diaz v. First Am. Home Buyers Prot. Corp.*, No. 09-CV-0775 H (WMC), 2011 WL 13143553, at *6 (S.D. Cal. Sept. 8, 2011) (No predominance where each class member's right to relief required claim-by-claim investigation, including "the scope of contract coverage, whether the homeowner read and relied on the contract, the particular repair at issue, the homeowner's actions and the contractor's response, Defendant's response, the amount of premiums or service fees paid, and who paid them.").

In the circumstances presented here, where each class member's individual business circumstance must be evaluated and individual risk assessments performed to determine whether

and to what extent any putative class member might be entitled to relief, common issues do not predominate, nor is a class action a "superior" method for resolving disputed claims. Based on the allegations in Plaintiffs' Complaint, they cannot meet Rule 23(b)(3)'s predominance and superiority requirements. Accordingly, class certification would be improper as a matter of law.

## CONCLUSION

Plaintiffs and Travelers bargained for insurance coverage, with Travelers bearing the risk during the policy period. Travelers has performed exactly as bargained for, and Plaintiffs have made no allegations to the contrary. Further, it is clear from Plaintiffs' Complaint that no class can be certified as a matter of law. This Court should GRANT this Motion and dismiss Plaintiffs' claims with prejudice.

Dated: September 10, 2020    Respectfully submitted,

          DENTONS US LLP

      By  /s/ *Lisa M. Krigsten*
        Lisa M. Krigsten (MO Bar No. 61583)
        Samantha Wenger (MO Bar No. 64230)
        4520 Main Street, Suite 1100
        Kansas City, Missouri 64111
        Telephone: (816) 460-2554
        Fax: (816) 531-7545
        lisa.krigsten@dentons.com
        samantha.wenger@dentons.com

        Stephen J. O'Brien (MO Bar No. 43977)
        One Metropolitan Square, Suite 3000
        St. Louis, MO 63102
        Telephone:  (314) 259-5904
        Fax:  (314) 259-5959
        stephen.obrien@dentons.com

        Keith Moskowitz (IL Bar No. 6274101)
        Richard L. Fenton (IL Bar No. 3121699)
        *Pro Hac Vice Pending*
        233 South Wacker Drive, Suite 5900

27

Chicago, IL 60606-6361
Telephone: (312) 876-8000
Fax: (312) 876-7934
keith.moskowitz@dentons.com
richard.fenton@dentons.com

Sandra D. Hauser (NY Bar No. 2488187)
*Pro Hac Vice Pending*
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Fax: (212) 768-6800
sandra.hauser@dentons.com

*ATTORNEYS FOR DEFENDANT*

## CERTIFICATE OF SERVICE

This will certify **DEFENDANT THE TRAVELERS INDEMNITY COMPANY OF AMERICA'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT AND, ALTERNATIVELY, MOTION TO STRIKE CLASS CLAIMS** was filed and served electronically using the Court's ECF filing system this 10th day of September, 2020.

*/s/ Lisa M. Krigsten*
Attorney for Defendant