IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | | |
|---|---|---|---|
| 4505 MADISON LLC<br>and FISHER LAW LLC, | )<br>)<br>) | | |
| Plaintiffs, | )<br>) | | |
| v. | ) | No. | 4:20-cv-00590-BCW |
| | ) | | |
| THE TRAVELERS INDEMNITY<br>COMPANY OF AMERICA, | )<br>)<br>) | | |
| Defendant. | ) | | |

**REPLY IN SUPPORT OF DEFENDANT
THE TRAVELERS INDEMNITY COMPANY OF AMERICA'S MOTION
TO DISMISS AND, ALTERNATIVELY, MOTION TO STRIKE CLASS CLAIMS**

Plaintiffs have filed a nationwide class action to obtain a partial refund on their business insurance premium because of the COVID-19 pandemic. The undisputed policy provisions and Travelers' filed "rules and rates" governing premium calculations definitively establish that Plaintiffs are entitled to no refund as a matter of law. In over 20 pages, Plaintiffs remain unable to point to a single term of their insurance policy that has been breached or a single legal requirement that has not been met by Travelers. Rather, Plaintiffs persist in advancing their wholly unsupported demand—in a purported national class action no less—that Travelers change the terms of their insurance policy in midstream. Because Plaintiffs' legal theories are unsupported, the Court should grant Travelers' Motion in its entirety.

### I. Plaintiffs Are Still Receiving the Benefits of Their Bargain.

Plaintiffs' policy includes multiple insurance coverages, Commercial General Liability ("CGL") coverage among them, for a single composite premium. Plaintiffs do not contest that Travelers remains on the risk and that their coverage has not changed over the course of the

policy period—and throughout the pandemic. Because Plaintiffs concede that the risk still exists, Plaintiffs do not dispute that they are still receiving the benefits of their bargain with Travelers.

Plaintiffs essentially are asking the Court to change the price Plaintiffs paid for the coverage they bargained for even though there is no contractual or extra-contractual vehicle entitling Plaintiffs to that relief. Plaintiffs have no basis to renegotiate their premium or have any part of their premium returned once the risk has attached. *See Fleetwood Acres v. Fed. Hous. Admin.*, 171 F.2d 440, 442 (2d Cir. 1948) ("[T]he ordinary rule is that an insured may not have any part of his premium returned once the risk attaches, even if it eventually turns out that the premium was in part unearned, unless there is an agreement to that effect."); 5 Couch on Ins. § 79:7; *N. New York Sav. Bank v. Fed. Sav. & Loan Ins. Corp.*, 515 F.2d 1355, 1359 n. 5 (D.C. Cir. 1975).

While Plaintiffs claim they should be entitled to a mid-policy refund in premium if a risk potentially insured by the policy does not come to pass or there is less of a chance that the risk will come to pass, that simply is not how insurance works, and Plaintiffs cite no authority allowing for such an interpretation of a policy. If the Court were to accept Plaintiffs' interpretation of the Travelers policy, then similar to what Plaintiffs attempt here, insurers could demand higher premiums mid-term when a weather forecast predicted a damaging hurricane or increased risk of wildfires—even a day in advance of an actual storm or wildfire encroaching on insured property. Such factors can be considered upon the inception of a policy, but to demand changes based upon such factors mid-term fundamentally alters the parties' bargain and is not fair or reasonable. One could only imagine the onslaught of litigation that would result if insurers or insureds had some free-floating extra-contractual right to demand the adjustment of premiums

any time. Insurance would be meaningless and it would turn the courts into "super-insurance regulators."[1]

## II. Plaintiffs Fail To Plead Any Legal Basis To Reduce Their Premium.

In addition to receiving the benefits for which they bargained, Plaintiffs have not effectively pled that there is any contractual requirement to change the policy premium. Travelers calculated Plaintiffs' premium based on its publicly filed rules and rates, which are not based on any factors that would fluctuate due to the pandemic.

### a. Plaintiffs' Complaint Itself Establishes That An Audit Would Not Change Their Premium.

Plaintiffs do not contest that their premiums were set in accordance with Travelers' filed rules and rates as required by the policy and Missouri law.[2] They also do not (and cannot) dispute that Travelers' rating rules, publicly filed with the Missouri Department of Insurance, form a part of their policy.[3] Those Office Pac Rating Rules (Doc. 10-3, at pp. 4-5), are

---

[1] Plaintiffs' assertion that this insurance-rate-making dispute should be heard by this Court, to the exclusion of Missouri's Insurance Commissioner, is the clearest demonstration that the court system would potentially be flooded with similar litigation whenever an insurer or insured were to contend that there has been a change in risk of claims probability after policy issuance. If there is any cognizable claim here, it involves insurance pricing that is the exclusive province of the Missouri Department of Insurance. *See Inter-City Beverage Co. v. Kansas City Power & Light Co.*, 889 S.W.2d 875, 878-79 (Mo. Ct. App. 1994) (administrative agencies given the authority by statute to control rate pricing and schemes should be provided the initial jurisdiction to determine if rates are excessive or consist of an overcharge); *Saunders v. Farmers Ins. Exch.*, 515 F. Supp. 2d 1009, 1017 (W.D. Mo. 2007), *aff'd*, 537 F.3d 961 (8th Cir. 2008) ("Insureds may *not* bring an action in state court challenging an insurance rate as discriminatory. Missouri provides an exclusive administrative remedy for rate complaints.").

[2] Doc. 10-2, at p. 88; Compl., ¶ 36. 61.

[3] *Id.* As Travelers explained in its Motion, Travelers' publicly filed rules and rates filings are affirmatively discussed in Plaintiffs' Complaint and thus they are deemed incorporated. *See U.S. ex rel. Kraxberger v. Kansas City Power & Light Co.*, 756 F.3d 1075, 1083 (8th Cir. 2014). Plaintiffs make the bare assertion that the Court should not consider Travelers' publicly filed rules and rates attached to the Motion because they were not accompanied by a declaration. However, the rules and rates bear the stamp of the Missouri Department of Insurance, and Plaintiffs do not challenge their authenticity. Accordingly, they are appropriately considered on this motion. *See Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1106 (N.D. Cal. 2013) ("QBE requests judicial notice of the QBEC rate filing as a matter of public record…Plaintiffs make no attempt to dispute that QBEC rate filing…The Court takes judicial notice of the QBEC rate filing as a matter of public record that is not subject to reasonable dispute."). Even if authenticity were an issue, the file stamp of the Missouri Department of Insurance is proper authentication, and the Missouri Department of Insurance's website confirms that the filings are publicly available. *See Armour v. Transamerica Life Ins. Co.*, No. CIV.A. 11-2034-KHV, 2012 WL 234032, at *4 (D. Kan. Jan. 25, 2012) (noting that proper authentication for insurance documents filed with Kansas Department of Insurance is "evidence that the document was recorded or filed in a public office as authorized by law is sufficient authentication. Fed. R. Evid. 901(b)(7)(A)."); Fed. R. Evid. 901(b)(7)(A) ("To satisfy the requirement of authenticating or identifying an item of

dispositive here because they establish that (a) there is no right to any premium audit or adjustment under the circumstances alleged by Plaintiffs, and (b) no rating factors would change in any event as a result of the pandemic. Those factors consist solely of fixed items such as zip code, square footage, presence of a sprinkler system, and value of the Business Personal Property, among others, which have not (and will not) fluctuate based on the pandemic.[4] While straightforward application of the rules and rates does not lead to the result Plaintiffs seek, they are nonetheless bound by the contract. They cannot just make up their own rules or speculate about other rating factors that do not appear in the applicable contract documents. The contract terms themselves are the beginning and end of the analysis, and they demonstrate that Plaintiffs' claims fail as a matter of law.

### b. Plaintiffs' Policy Does Not Permit An Audit.

Although Plaintiffs allege that Travelers' breach of contract and duties are based upon Travelers' alleged failure to conduct a mid-term premium audit, none is required under the policy. Referencing only the CGL audit provision that describes computing earned premiums "at the close of each audit period,"[5] Plaintiffs nevertheless insist that premiums sometimes get adjusted mid-term, so that there must be mid-term audits. Of course, if the policy is cancelled, or an insured wants to change the coverage (up or down), the Common Policy Conditions expressly address these situations, including a return of any premiums.[6] But Plaintiffs are not seeking to cancel or amend their policy midstream. They still want the exact coverage they bought, just at a new, lower price. By incorporating the policy and the rating rules into their Complaint, Plaintiffs

---

(..continued)
evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is… (7) Evidence About Public Records. Evidence that: (A) a document was recorded or filed in a public office as authorized by law…"). *See also* Missouri Dep't of Commerce & Ins., Missouri General Instructions Document Property & Casualty (Aug. 2019), https://insurance.mo.gov/industry/filings/pc/documents/Missouri_Filing_Instructions_amp_Guidlines.pdf.

[4] Doc. 10-3, at pp. 4-5.
[5] Compl., ¶ 38; Doc. 10-2, at p. 35.
[6] Doc. 10-2, at p. 87. Amendments to coverages can certainly work in both directions, up and down. Travelers made no suggestions in its opening brief that adjustments can only favor Travelers.

actually demonstrate that there is no audit right (as well as demonstrating that the risk factors Travelers considered in setting the premium for Plaintiffs' policy have not changed and that there is no basis to consider a premium adjustment without the parties mutually agreeing to amend the policy itself).

Even the one policy provision cited by Plaintiffs—the CGL audit provision that references calculations at the end of the audit period—does not provide Plaintiffs the audit right they seek. As demonstrated in Section II of Travelers' opening brief, the CGL audit provision applies only when a CGL premium is shown in the CGL Coverage Part of the policy. Plaintiffs' composite Office Pac policy contains no separate CGL premium, it contains only a single, combined premium for all coverages purchased. The rating rules have no provision regarding an audit of the combined Office Pac premium.[7]

Rather than addressing the fact that the policy lacks a specific CGL premium, Plaintiffs take refuge from dismissal by asserting that the insurance policy must be ambiguous about mid-term audits. However, Plaintiffs point to no conflicting provisions that would give rise to any confusion about the policy terms. "Under Missouri law, the court must accept the written policy as the expression of the agreement made by the parties, and give effect to the intentions of the parties as disclosed by clear and unambiguous language." *Goodwillie v. Farmers Ins. Co. Inc.*, Case No. 07-0252-CV-W-RED, 2007 WL 9718251, at *2 (W.D. Mo. Dec. 11, 2007) (citation omitted). "Ambiguity exists when there is duplicity, indistinctness or uncertainty in the meaning of the language used in the policy," and, importantly, "a disagreement between the parties over the interpretation of the terms of the insurance policy does not itself render the language ambiguous. *Id.* "Whether the language of an insurance policy or provision is ambiguous is a question of law[,]" and courts "are not permitted to create an ambiguity in order to distort the

---

[7] Doc. 10-3, at pp. 4-5.

5

language of an unambiguous policy, or, in order to enforce a particular construction which it might feel is more appropriate." *Id.* (citations omitted).

In this case, by failing to discuss any contract terms at all, Plaintiffs necessarily fail to articulate any potential ambiguity among contract provisions. The plain language of the CGL audit provision only applies where there is a separate premium for CGL coverage, and there is no separate premium here and no audit right under the policy. Accordingly, Plaintiffs have failed to properly allege any contract breach.

### III. Plaintiffs Cannot Rely on Extra-Contractual or Implicit Contract Claims to Change the Terms of Their Written Contract.

Plaintiffs have not identified any benefit that they conferred on Travelers outside of the parties' contract, let alone any benefit that it would be unjust for Travelers to keep. Plaintiffs paid the contracted-for premium in exchange for various types of insurance coverages that have gone unchanged since the beginning of the policy period. Travelers assumed the risk per the policy terms in exchange for the agreed-upon premium. Plaintiffs cite no authority that would entitle them to a refund of their premium outside the terms of their written contract.

As for good faith and fair dealing, Plaintiffs argue that Travelers "exercised a judgment conferred by the express terms of the [Policy] in such a manner as to evade the spirit of the transaction or so as to deny [Plaintiffs] the expected benefit of the contract" when it failed to return a portion of Plaintiffs' premium.[8] By simply reiterating a legal standard without applying it to their own allegations, Plaintiffs fail to actually identify "a judgment conferred by the express terms" of the policy that Travelers abused. Instead, Plaintiffs argue that Travelers "exercised its judgment—i.e., whether to consider the change in coverage circumstances regarding COVID-19 to return an overpayment of a premium—to the detriment of Plaintiffs."[9]

---

[8] Doc. 19, at p. 22.
[9] *Id.*

This is not a case in which Plaintiffs seek to cancel or mutually amend the existing contract. Instead, Plaintiffs seek to unilaterally reform the insurance policy in the middle of the policy period. Travelers' adherence to the contract terms, which are squarely before the Court and are incorporated into the Complaint, is hardly a matter of bad faith. Accordingly, Plaintiffs have failed to articulate a cognizable claim for breach of good faith and fair dealing.

IV. **Plaintiffs Have Failed to Exhaust Administrative Remedies.**

There is no dispute Missouri has an administrative mechanism to review and address rate concerns of an insured, even those filed for informational purposes. *See* Mo. Rev. Stat. §379.348; *McClain v. Shelter Gen. Ins. Co.*, No. 97-1139-CV-W-FJG, 2007 WL 844769, at *7-8 (W.D. Mo. Mar. 16, 2007) *aff'd sub nom. Saunders v. Farmers Ins. Exch.*, 537 F.3d 961 (8th Cir. 2008). To evade administrative review, Plaintiffs claim that they merely are challenging their premium, not the underlying rates, and thus assert that this administrative process does not apply and that the Department lacks jurisdiction.

A plain reading of Plaintiffs' Complaint shows that they are directly challenging Travelers' rates and how Travelers applied those rates to Plaintiffs. For example, Plaintiffs allege "if [Travelers] factored in the shutdown and COVID-19 when it applied its rules and rates, then Plaintiffs" would have paid less in premiums.[10] Plaintiffs make much of their supposed "radical reduction in exposure," their lower exposure rate, that Travelers files its rates with the State, and they quote the policy provision that indicates their premium is calculated per the filed rules and rates.[11] Although they are wrong about what rating factors apply, Plaintiffs even speculate about rating factors in their Complaint.[12] While Plaintiffs distinguish between rates and premiums, they do not and cannot dispute that the premium is derived directly from Travelers' rates. The

---

[10] Compl., ¶ 67.
[11] *Id.*, ¶¶ 30, 34, 36, 38, and 61.
[12] *Id.*, ¶¶ 42-43.

premium cannot change absent a corresponding alteration in Travelers' rates and rating plan, which places the matter squarely within the Missouri Department of Insurance's jurisdiction.

Plaintiffs then claim that the administrative remedy is not exclusive and that *McClain* did not address their "may" versus "shall" distinction. But *McClain* did examine the Missouri regulatory structure, explicitly held that the administrative remedy is exclusive and, relying on the Missouri Supreme Court's decision in *Shqeir v. Equifax*, 636 S.W.2d 944 (Mo. 1982) (en banc), held that the Missouri legislature did not intend to create a private right of action. *McClain,* 2007 WL 844769, at *7-8. Because an administrative structure is in place to address Plaintiffs' concerns, however lacking in merit, Plaintiffs should be required to pursue them through that structure instead of involving the courts. Indeed, to forgo the regulatory process and allow this litigation to proceed is likely to result in the court system being flooded with this type of litigation, making the courts "super insurance regulators." Respectfully, the issues raised by Plaintiffs are not within the role of the court, but of the expert state regulators responsible for insurance matters.

### V. The Class Action Claims Should Be Stricken.

In their brief, Plaintiffs chose to ignore the fundamental pleading problems presented by a nationwide class action regarding insurance policies and premium calculations that were detailed in Travelers' Motion. Indeed, their only response was to restate the very requirements the Complaint fails to meet while asserting that Travelers' Motion is premature because they have not conducted discovery. In so arguing, Plaintiffs allege that dismissing class allegations prior to discovery is atypical and discouraged, but they do not address the myriad cases Travelers cites that do just that. In fact, such decisions are all the more common after *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

Plaintiffs' primary legal argument attacks the straw man that Travelers is somehow insisting Plaintiffs make a showing of uniform damages at this stage of the litigation. But as Travelers' Motion sets forth, the issue is not just damages. The fundamental problem with Plaintiffs' allegations has to do with 50 different states adopting diverse positions on the pandemic and 50 different states having their own insurance laws. This unquestionably leads to numerous and different insurance policies being sold by Travelers to unique businesses that are each affected by the pandemic in different ways. There will be no uniform insurance policy this Court would review, and yet Plaintiffs intend to proceed based on a single count for breach of contract. The rules and rating requirements will undoubtedly differ across policy products and across state lines. As such, the impact on premiums will hardly be consistent from one business to the next. Whether policies are auditable and whether the audits would result in changes to premiums will differ from one policyholder to the next. There is literally no uniformity among the businesses Plaintiffs seek to represent. Each will have been impacted by the pandemic in different ways, if at all, and will be asking this Court to consider their different coverages on different policy forms and declarations.

Plaintiffs ignore these individualized issues, all of which are readily apparent from the face of Plaintiffs' Complaint. The issues will not just disappear after discovery. Where, as here, it is apparent that there is no Rule 23 commonality, typicality or predominance of common issues, the overwhelming weight of current authority, as cited in Travelers' opening brief, (and ignored by Plaintiffs), is to dismiss such class allegations at the outset to prevent monumental wastes of time and resources on pointless discovery and class certification proceedings. The claims should justifiably be stricken now.

## CONCLUSION

For the reasons set forth above, and those previously stated, this Court should GRANT this Motion and dismiss Plaintiffs' claims with prejudice.

Dated: October 8, 2020

Respectfully submitted,

DENTONS US LLP

By   /s/ *Lisa M. Krigsten*
    Lisa M. Krigsten (MO Bar No. 61583)
    Samantha Wenger (MO Bar No. 64230)
    4520 Main Street, Suite 1100
    Kansas City, Missouri 64111
    Telephone: (816) 460-2554
    Fax: (816) 531-7545
    lisa.krigsten@dentons.com
    samantha.wenger@dentons.com

    Stephen J. O'Brien (MO Bar No. 43977)
    One Metropolitan Square, Suite 3000
    St. Louis, MO 63102
    Telephone: (314) 259-5904
    Fax: (314) 259-5959
    stephen.obrien@dentons.com

    Keith Moskowitz (IL Bar No. 6274101)
    Richard L. Fenton (IL Bar No. 3121699)
    *Pro Hac Vice*
    233 South Wacker Drive, Suite 5900
    Chicago, IL 60606-6361
    Telephone: (312) 876-8000
    Fax: (312) 876-7934
    keith.moskowitz@dentons.com
    richard.fenton@dentons.com

    Sandra D. Hauser (NY Bar No. 2488187)
    *Pro Hac Vice*
    1221 Avenue of the Americas
    New York, NY 10020-1089
    Telephone: (212) 768-6700
    Fax: (212) 768-6800
    sandra.hauser@dentons.com

    *ATTORNEYS FOR DEFENDANT*

## CERTIFICATE OF SERVICE

This will certify **REPLY IN SUPPORT OF DEFENDANT THE TRAVELERS INDEMNITY COMPANY OF AMERICA'S MOTION TO DISMISS COMPLAINT AND, ALTERNATIVELY, MOTION TO STRIKE CLASS CLAIMS** was filed and served electronically using the Court's ECF filing system this 8th day of October, 2020.

*/s/ Lisa M. Krigsten*
Attorney for Defendant